Daniel S. Wittenberg, Bar No. 158254
dwittenberg@swlaw.com
Andrew S. Green, Bar No. 316459
asgreen@swlaw.com
SNELL & WILMER L.L.P.
City National 2CAL
350 South Grand Avenue
Suite 3100
Los Angeles, California 90071
Telephone: 213.929.2500
Facsimile: 213.929.2525

Attorneys for Defendant WISDOM NATURAL BRANDS

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BOYD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WISDOM NATURAL BRANDS,<br><br>Defendant. | Case No. 2:25-cv-12080-CV(RAOx)<br><br>District Judge:  Cynthia Valenzuela<br>Magistrate Judge:  Rozella A. Oliver<br><br>**DEFENDANT WISDOM NATURAL BRANDS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with the Declaration of Daniel S. Wittenberg; and [Proposed] Order]*<br><br>Date:    April 3, 2026<br>Time:    1:30 p.m.<br>Dept:    10B<br><br>Complaint Filed:   December 22, 2025<br>Trial Date:    None Set |

4902-1191-6170

TO THE COURT, PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 3, 2026, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Cynthia Valenzuela, in Department 10B of the above-entitled court, located at 350 W 1st St, Los Angeles, CA 90012, Defendant Wisdom Natural Brands ("Defendant") will, and hereby does, move this Court for an Order dismissing Plaintiff John Boyd's ("Plaintiff") Complaint (the "Motion").

This Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

1. Plaintiff's California Consumers Legal Remedies Act (the "CLRA") (Count I), California Unfair Competition Law (the "UCL") (Count II), and California False Advertising Law ("the FAL") (Count III) claims fail because the claims are federally preempted. Moreover, Plaintiff does not and cannot allege conduct that is false, misleading, or deceptive under the reasonable consumer standard. Reasonable consumers understand that the presence of an ingredient in a product is not the same as predominance of that product itself. Furthermore, as a matter of law, the Sweet Leaf Monk Fruit Organic Sweetener (the "Product") does not contain an artificial or synthetic ingredient, and thus, there is nothing misleading about its labels.

2. Plaintiff's claims for Breach of Express Warranty (Count IV) and Breach of Implied Warranty (Count V) fail because the Product accurately discloses the ingredients, includes an organic certification, and does not affirmatively state that monk fruit is the predominant sweetener. There is also no privity of contract between Plaintiff and WNB to state an implied warranty claim.

3. Plaintiff's Negligent Misrepresentation (Count VI) and Intentional Misrepresentation/Fraud (Count VII) claims fail because there is no actionable misrepresentation and there is no plausible allegation of scienter.

4. Plaintiff's Quasi-Contract/Unjust Enrichment claim (Count VIII) fails because California does not recognize an independent claim for unjust enrichment.

- 2 -

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

5.    Plaintiff lacks standing to seek injunctive relief because Plaintiff does not state that he will buy the Product in the future.

This Motion is further brought pursuant to Federal Rule of Civil Procedure 12(f)(2) on the following grounds:

1.    Plaintiff's nationwide claims for Breach of Implied Warranty (Count V), Negligent Misrepresentation (Count VI), Intentional Misrepresentation/Fraud (Count VII), and Unjust Enrichment (VIII) should be stricken because choice of law principles make nationwide class claims untenable, and it is clear from the pleadings that a class cannot be certified.

This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities, supporting Declaration of Daniel S. Wittenberg, all of which are attached hereto, filed, and served herewith, all pleadings, papers, and other documents filed with this Court, and on such other evidence, oral, or documentary, as may be presented at the time of the hearing of this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on or about October 28 and December 3, 2025. (*See* Declaration of Daniel S. Wittenberg ("Wittenberg Decl."), ¶ 2.) The parties were unable to reach a resolution.

Dated: February 25, 2026          SNELL & WILMER L.L.P.


By: */s/ Daniel S. Wittenberg*
Daniel S. Wittenberg
Andrew S. Green

Attorneys for Defendant
WISDOM NATURAL BRANDS

4902-1191-6170

# **TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 10 |
| II. | SUMMARY OF PERTINENT FACTUAL ALLEGATIONS | | 11 |
| | A. | Plaintiff Purchases the Product | 11 |
| | B. | Plaintiff's Claims and Proposed Classes | 12 |
| III. | LEGAL STANDARD | | 13 |
| IV. | LEGAL ARGUMENT | | 14 |
| | A. | Plaintiff's Claims Under the CLRA, UCL, and FAL Must be Dismissed | 14 |
| | | 1. Plaintiff's Consumer Protection Claims are Federally Preempted | 14 |
| | | 2. Plaintiff Fails to Plausibly Allege the Product Label is False, Misleading, or Deceptive Under the Reasonable Consumer Standard | 17 |
| | B. | Plaintiff Fails to State a Claim for Breach of Express Warranty and Breach of Implied warranty | 20 |
| | C. | Plaintiff Fails to State a Claim for Negligent Misrepresentation and Intentional Misrepresentation | 22 |
| | | 1. Plaintiff Does Not Allege an Actionable Misrepresentation | 22 |
| | | 2. Plaintiff Fails to Plausibly Allege Scienter | 23 |
| | D. | Plaintiff Fails to State a Claim for Quasi-Contract/Unjust Enrichment | 23 |
| | E. | Plaintiff Lacks Standing to Seek Injunctive Relief | 24 |
| | F. | The Court Should Strike Plaintiff's Nationwide Class Allegations. | 24 |
| | | 1. Conflicting State Laws Make Nationwide Class Certification Improper. | 26 |
| | | 2. Each State Has an Interest in Applying its Own Laws to the Claims Asserted, and True Conflicts Therefore Exist | 28 |
| | | 3. States' Interests Would Be Impaired by Applying Other States' Laws | 29 |
| V. | CONCLUSION | | 29 |

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

SNELL & WILMER

4902-1191-6170

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Altria Grp., Inc. v. Good*,
   555 U.S. 70 (2008) ..................................................................................14

*Apache Corp. v. MDU Res. Grp., Inc.*,
   603 N.W.2d 891 (N.D. 1999) ..................................................................28

*Argueta v. Henkel Corp.*,
   793 F. Supp. 3d 1192 (C.D. Cal. 2024) ..................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................13

*Becerra v. Dr. Pepper/Seven Up., Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ..........................................................18, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................13

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) ............................................................27

*Burr v. Sherwin Williams Co.*,
   42 Cal.2d 682, 695 (1954). ....................................................................26

*Chae v. SLM Corp.*,
   593 F.3d 936 (9th Cir. 2010) ..................................................................14

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. 2021)....................................................21

*Collyer v. Catalina Snacks Inc.*,
   712 F. Supp. 3d 1276 (N.D. Cal. 2024)..................................................21

*Czuchaj v. Conair Corp.*,
   2016 WL 1240391 (S.D. Cal. Mar. 30, 2016)........................................27

*Darisse v. Nest Labs, Inc.*,
   2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)...................................26, 27

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

*Davison v. Kia Motors Am., Inc.*,
   2015 WL 3970502 (C.D. Cal. June 29, 2015)....................................................29

*Desai v. Franklin*,
   2008-Ohio-3957....................................................................................................28

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ..........................................................................17, 19

*Elbaz v. Vitals Int'l Grp.*,
   2018 WL 5868739 (C.D. Cal. Apr. 10, 2018).....................................................19

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ...............................................................................18

*Frezza v. Google Inc.*,
   2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ....................................................26

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ...........................................................................................24

*Gianino v. Alacer Corp.*,
   846 F. Supp. 2d 1096 (C.D. Cal. 2012)...............................................................27

*Graham v. Andros Foods USA, Inc.*,
   2025 WL 3190647 (C.D. Cal. Aug. 12, 2025).....................................................23

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013)...............................................................17

*Hairston v. South Beach Beverage Co., Inc.*,
   2012 WL 1893818 (C.D. Cal., May 18, 2012)...............................................16, 18

*Holt v. Noble House Hotels & Resort, Ltd.*,
   370 F.Supp.3d 1158 (S.D. Cal. 2019) .................................................................17

*In re Actimmune Mktg. Litig.*,
   WL 3740648, (N.D. Cal. Nov. 6, 2009)................................................................22

*In re Apple & AT&T Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011)..........................................................23, 28

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
   2017 WL 4676585 (C.D. Cal. Oct. 10, 2017) .....................................................17

- 6 -

4902-1191-6170

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..................................................................................................22

*Jackson v. Suzuki Motor of Am., Inc.*,
   2024 WL 3914666 (C.D. Cal. July 9, 2024) ..............................................................26, 28

*Karabas v. TC Heartland LLC*,
   770 F. Supp. 3d 454 (E.D.N.Y. 2025) ...............................................................................19

*Lavie v. Procter & Gamble Co.*,
   105 Cal.App.4th 496 (2003) .............................................................................................17

*Maneely v. Gen. Motors Corp.*,
   108 F.3d 1176 (9th. Cir. 1997) .........................................................................................20

*Marentette v. Abbott Lab'ys, Inc.*,
   201 F. Supp. 3d 374 (E.D.N.Y. 2016) ...........................................................................15, 16

*Marentette v. Abbott Lab'ys, Inc.*,
   886 F.3d 112 (2d Cir. 2018) .............................................................................................16

*Martinez v. Mead Johnson & Co., LLC*,
   2022 WL 15053334 (C.D. Cal. Oct. 22, 2022) .................................................................18

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .....................................................................................*passim*

*McGarity v. Sun-Maid Growers of California*,
   801 F. Supp. 3d 1120 (S.D. Cal. 2025) .............................................................................21

*McKinney v. Corsair Gaming, Inc.*,
   646 F.Supp.3d 1133 (N.D. Cal. 2022) ..........................................................................26, 29

*Melchior v. New Line Productions, Inc.*,
   106 Cal.App.4th 779, 794 (2003) .....................................................................................28

*Moore v. Trader Joe's Co*,
   4 F.4th 874 (9th Cir. 2021) ..............................................................................................19

*Muehlbauer v. General Motors Corp.*,
   431 F.Supp.2d 847 (N.D. Ill. 2006) ..................................................................................28

*N. Cheyenne Tribe v. Roman Catholic Church*,
   2013 MT 24 (Mont. 2013) ................................................................................................28

4902-1191-6170

*Rahman v. Mott's LLP,*
   2014 WL 325241 (N.D. Cal. Jan. 29, 2014) .......................................................24

*Robinson Helicopter Co., Inc. v. Dana Corp.,*
   34 Cal. 4th 979 (Cal. 2004) ..............................................................................22

*Siegemund v. Shapland,*
   247 F.Supp.2d 1 (D. Me. 2003) ........................................................................27

*Small v. Fritz Companies, Inc.,*
   30 Cal. 4th 167 (Cal. 2003) ..............................................................................22

*Steckman v. Hart Brewing, Inc.,*
   143 F.3d 1293 (9th Cir. 1998) ..........................................................................13

*Stewart v. Kodiak Cakes, LLC,*
   537 F. Supp. 3d 1103 (S.D. Cal. 2021) ............................................................23

*Tarvin v. Olly Pub. Benefit Corp.,*
   756 F. Supp. 3d 797 (C.D. Cal. 2024) ..............................................................22

*Tomek v. Apple Inc.,*
   636 F. App'x 712 (9th Cir. 2016) .....................................................................23

*Viggiano v. Hansen Nat. Corp.,*
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ..............................................................20

*Vinci v. Hyundai Motor Am.,*
   2018 WL 6136828 (C.D. Cal. Apr. 10, 2018).................................26, 27, 28, 29

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008) ............................................................................17

*Winn Fuel Serv., Inc. v. Booth,*
   34 So.3d 515 (La. Ct. App. 2010) ....................................................................27

**Statutes**

7 U.S.C. §§ 6501-6523 ............................................................................................14

7 U.S.C. § 6502(22) .................................................................................................16

7 U.S.C. § 6504.........................................................................................................15

7 U.S.C. § 6504-05 ...................................................................................................14

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

7 U.S.C. § 6514(a) ........................................................................................... 14

7 U.S.C. § 6515 ............................................................................................... 14

7 U.S.C. § 6519 ............................................................................................... 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................... 13

**Regulations**

7 C.F.R. § 205.300(a) ...................................................................................... 14

7 C.F.R. § 205.302(c) ...................................................................................... 14

21 C.F.R. § 101.4(a)(1) ................................................................................... 19

**Other Authorities**

Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1383 (3d ed.) .......................... 24, 25

4902-1191-6170

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff John Boyd ("Plaintiff") brings this putative class action against Wisdom Natural Brands ("WNB") on the grounds that WNB's Sweet Leaf Monk Fruit Organic Sweetener (the "Product") labels are deceptive and misleading because they inflate the amount of monk fruit in the product and falsely represent that there are no artificial ingredients in the Product. But a simple review of the Product label demonstrates these allegations are wrong. The Product accurately states that the Product is a "Monk Fruit Organic Sweetener." Further, there are no artificial ingredients because the only two ingredients, organic erythritol and organic monk fruit extract, are both non-artificial ingredients.

Nevertheless, Plaintiff alleges that the Product label is misleading and therefore violates the California Consumers Legal Remedies Act (the "CLRA") (Count I), the California Unfair Competition Law (the "UCL") (Count II), and the California False Advertising Law ("the FAL") (Count III). Plaintiff further contends the Product label breaches express and implied warranties, constitutes negligent and intentional misrepresentation, and constitutes quasi-contract/unjust enrichment. Plaintiff's claims fail as pleaded.

First, Plaintiff's consumer protection claims are federally preempted. The Product labels comply with the federal rules and regulations regarding "organic" product labeling. Thus, Plaintiff's consumer protection claims are federally preempted and fail as a matter of law.

Second, Plaintiff's consumer protection claims do not plausibly allege a cause of action because Plaintiff fails to adequately plead that the Product is materially misleading to a reasonable consumer. The Product labels accurately state that there is monk fruit contained in the Product, and that there is nothing artificial in the Product.

Third, Plaintiff's claims for Breach of Express Warranty (Count IV) and

SNELL & WILMER

- 10 -

4902-1191-6170

Breach of Implied Warranty (Count V) fail because the Product labels are truthful. There is also no privity between Plaintiff and WNB to state an implied warranty claim.

Fourth, Plaintiff's Negligent Misrepresentation (Count VI) and Intentional Misrepresentation/Fraud (Count VII) claims fail because there is no actionable misrepresentation and there is no plausible allegation of scienter.

Fifth, Plaintiff's Quasi-Contract/Unjust Enrichment claim (Count VIII) fails because California does not recognize an independent claim for unjust enrichment and Plaintiff alleges the existence of an express warranty.

Finally, Plaintiff cannot represent a nationwide class for his implied warranty, negligent misrepresentation and intentional misrepresentation/fraud, and Quasi-Contract/Unjust Enrichment claims because of choice of law principles.

Plaintiff's conclusory and defective allegations cannot sustain any of his claims against WNB.

## II.    SUMMARY OF PERTINENT FACTUAL ALLEGATIONS

### A.    Plaintiff Purchases the Product

Plaintiff is a resident of California. (Compl. at ¶ 13.) WNB makes, distributes, and sells the Product. (*Id.* at ¶ 1.) Plaintiff alleges that the Product labels are misleading because they state the Product is a "monk fruit" sweetener, "sweetened by nature," and contains "nothing artificial." (*Id.* at ¶ 2.) According to Plaintiff, the Product actually "contains less than 1% monk fruit extract" and the primary sweetener is an "artificial sweetener erythritol." (*Id.*)

The front of the Product contains labels that state, "MONK FRUIT ORGANIC SWEETENER," "USDA ORGANIC," "SWEETENED BY NATURE," "NOTHING ARTIFICIAL," and "1:1 SUGAR SUBSTITUTE." (*Id.* at ¶ 14.) Plaintiff does not dispute that the Product contains monk fruit. Instead, Plaintiff alleges these truthful representations "mislead[] reasonable consumers into believing that the Product contains a substantial amount of monk fruit and contains nothing

4902-1191-6170

artificial." (*Id*. at ¶ 18.)

Plaintiff contends the Product "contains almost no monk fruit and instead primarily contains an artificial sweetener ingredient called erythritol." (*Id*. at ¶ 19.) Specifically, Plaintiff claims the Product only has "0.87% monk fruit extract and 99.13% erythritol." (*Id*. at ¶ 21.) Plaintiff acknowledges, however, that "monk fruit extract is 100-250 times sweeter than sugar." (*Id*.)

Plaintiff alleges that erythritol is an artificial sweetener because it is commercially produced through chemical extraction of starch, which is converted to glucose through enzymatic hydrolysis, and finally fermented through specific yeasts, which contains erythritol. (*Id*. at ¶ 25-26.) Plaintiff maintains the erythritol in the Product is "synthetically manufactured," even though fermentation is an organic process. (*Id*. at ¶ 29.)

Plaintiff claims he purchased the Product at a Walmart retail store in Los Angeles County in or around 2025. (*Id*. at ¶ 30.) "Plaintiff read and relied on the Product's front label representations" in believing that the Product contained nothing artificial and "was primarily a monk fruit sweetener." (*Id*. at ¶ 31.) Plaintiff claims he "would not have purchased the Product, or would not have paid as much as he did, had he known that the Product contained only a negligible amount of monk fruit[.]" (*Id*. at ¶ 32.)

### B. Plaintiff's Claims and Proposed Classes

Based on the above allegations, Plaintiff asserts eight claims in his putative class action Complaint for: (1) Violation of the CLRA, (2) Violation of the UCL, (3) Violation of the FAL, (4) Breach of Express Warranty, (5) Breach of Implied Warranty, (6) Negligent Misrepresentation, (7) Intentional Misrepresentation/Fraud, and (8) Quasi-Contract/Unjust Enrichment.

Plaintiff asserts these claims in his individual capacity and on behalf of two proposed classes:

///

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

///

### The Nationwide Class

All U.S. citizens who purchased the Product in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

### The California Subclass

All California citizens who purchased the Product in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

(*Id*. at ¶ 50.)

Plaintiff seeks damages, equitable relief, and injunctive relief from WNB. (*See id*. at ¶¶ 43-49.)

## III.   LEGAL STANDARD

A complaint must be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[T]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In assessing plausibility on a Rule 12(b)(6) motion, a court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint. *Id.* at 679. But the allegations must consist of more than mere labels, legal conclusions, or "a formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Id.* at 678-79. Dismissal without leave to amend is appropriate where amendment would be futile. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

///

///

///

///

4902-1191-6170

///

## IV.   LEGAL ARGUMENT

### A.   Plaintiff's Claims Under the CLRA, UCL, and FAL Must be Dismissed

#### 1.   Plaintiff's Consumer Protection Claims are Federally Preempted

Plaintiff's CLRA, UCL, and FAL claims, which challenge whether the Product's ingredients are natural or artificial, fail because they are preempted by federal law prohibiting state law claims that, like here, would impose different or additional requirements than what is permitted under federal law.

Under the Supremacy Clause of the United States Constitution, "state laws that conflict with federal law are without effect" and are preempted. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citations and quotations omitted). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citations omitted).

The Organic Foods Production Act of 1990 ("OFPA") and its regulations, known as the National Organic Program ("NOP"), establish the standards for certifying a product or producer as "organic." *See generally*, 7 U.S.C. §§ 6501-6523. In order to be sold or labeled as "organic," a product must be certified by a USDA-accredited certifying agent. 7 U.S.C. §§ 6504-05, 6514(a), 6515, 6519; *see also*, *e.g.*, 7 C.F.R. §§ 205.300(a), 205.302(c).

In order to be "organic" under the OFPA, a product must:

> (1) have been produced and handled without the use of synthetic chemicals, except as otherwise provided in [the OFPA];

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

> (2) except as otherwise provided in [the OFPA] and excluding livestock, not be produced on land to which any prohibited substances, including synthetic chemicals, have been applied during the 3 years immediately preceding the harvest of the agricultural products; and
>
> (3) be produced and handled in compliance with an organic plan agreed to by the producer and handler of such product and the certifying agent.

7 U.S.C. § 6504.

In this case, Plaintiff alleges the Product contains a "synthetic" ingredient, erythritol. This allegation necessarily implicates the question of whether the Product is properly certified as "organic" under the OFPA and NOP. Because Plaintiff is effectively challenging WNB's compliance with organic labeling laws, resolution of Plaintiff's claims would conflict with regulation and enforcement of the OFPA by the federal government.

*Marentette v. Abbott Lab'ys, Inc.,* 201 F. Supp. 3d 374 (E.D.N.Y. 2016) is directly on point. In *Marentette*, the plaintiffs filed a putative class action alleging violations of California and New York consumer protection statutes, including the UCL, FAL, and CLRA. *Id.* at 377. The plaintiffs asserted the defendant's infant formula was falsely labeled "Organic" because it contained ingredients allegedly prohibited in organic products under USDA rules. *Id.* at 374. The defendant filed a motion to dismiss because its products were certified as "Organic" by Quality Assurance International ("QAI"), a USDA-accredited certifying agent, and therefore, the plaintiffs' claims sought to impose liability on defendant for representations that were permitted by a USDA-accredited agent. *Id.* at 379.

The district court agreed with the defendant and held that "all of [p]laintiffs' claims [we]re preempted." *Id.* at 385. The court reasoned that the OFPA's purpose of establishing national standards governing marketing of products as organic would be undermined by state law claims and would render the USDA's organic certification meaningless; furthermore, allowing state law claims could lead to

- 15 -

4902-1191-6170

conflicting definitions of "organic," completely untethered from the definition articulated by Congress. *Id.* at 382-83. The court explained further:

> QAI certified the Products as "Organic" under federal law and only then was [d]efendant permitted to use the word "Organic" and the USDA seal on the Products' labels. Plaintiffs' challenge to this labeling cannot be described in any way other than a direct challenge to the USDA-accredited certifying agent's decision itself. The Court finds that such a challenge is preempted because "[t]o the extent state law permits outside parties, including consumers, to interfere with or second guess the certification process, the state law is an obstacle to the accomplishment of congressional objectives of the OFPA."

*Id.* at 381 (citations omitted). The Second Circuit ultimately affirmed the district court's decision, reasoning in relevant part: "Because determining whether [plaintiffs] have meritorious state-law claims requires the Court to look behind [defendant's] certification granted pursuant to a federal scheme, those state-law claims are an obstacle to the federal scheme's objectives and are preempted." *Marentette v. Abbott Lab'ys, Inc.*, 886 F.3d 112, 119 (2d Cir. 2018).

Here, Plaintiff claims that the Product label is false and misleading, in part, because the ingredient erythritol "is synthetically manufactured and not natural." (Compl. at ¶ 29.) However, like the infant formula at issue in *Marentette*, the Product is certified as "organic" by the QAI. The OFPA defines the term "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C. § 6502(22). The "organic" labeling on the Product necessarily means that WNB is in compliance with the OFPA.

Plaintiff asks the Court to disregard the organic certification on the Product and seeks an order requiring WNB to modify the Product labels to fit his own assumptions on what is synthetic and what is natural. This is prohibited by the OFPA and the Supremacy Clause, and therefore, Plaintiff's consumer protection claims are

- 16 -

4902-1191-6170

federally preempted. *See Hairston v. South Beach Beverage Co., Inc.*, 2012 WL 1893818, at *3 (C.D. Cal., May 18, 2012) (finding the plaintiff's CRLA, UCL, and FAL claims expressly federally preempted when the claims challenged the "all natural" and fruit name labels on the defendants' beverages); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1123 (N.D. Cal. 2013) ("Because [the defendant's] calorie-related claims appear to comply with all applicable federal regulations, any finding that these claims are unlawful and deceptive would impose requirements not identical to the FDA's regulations."); *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, 2017 WL 4676585, at *6 (C.D. Cal. Oct. 10, 2017) (finding the plaintiffs' claims were preempted because the defendant was "in compliance with the FDCA and [p]laintiffs seek causes of action on the basis of this conduct.").

### 2. Plaintiff Fails to Plausibly Allege the Product Label is False, Misleading, or Deceptive Under the Reasonable Consumer Standard

Plaintiff also fails to plausibly allege that WNB engaged in conduct likely to deceive reasonable consumers. Claims under CLRA, FAL, and UCL are governed by the reasonable consumer test, under which a plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The reasonable consumer standard requires more than a mere possibility that some consumers may be misled by the defendant's act or practice; rather, it 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Whether a representation is "likely to deceive" requires a court to determine "that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003). "[C]ourts may conclude that a business practice is not likely to deceive a reasonable consumer as a matter of

4902-1191-6170

law." *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F.Supp.3d 1158, 1167 (S.D. Cal. 2019).

In general, a plaintiff's "selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA, FAL, or UCL claim." *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012); *see also Argueta v. Henkel Corp.*, 793 F. Supp. 3d 1192, 1198 (C.D. Cal. 2024) ("[A] plaintiff's own 'unreasonable assumptions about a product's label or desire to take the label out of 'its proper context' will not suffice.") (quoting *Becerra v. Dr. Pepper/Seven Up., Inc.*, 945 F.3d 1225, 1229-30 (9th Cir. 2019). Rather, courts look to the "promotion as a whole" to determine if a product's advertising is deceptive. *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995).

### a. Reasonable Consumers Understand That an Ingredient's Presence is Not the Same as Predominance

Plaintiff alleges the Product label misleads reasonable consumers into believing the Product contains a substantial amount of monk fruit when, in fact, the Product contains almost no monk fruit and is sweetened primarily by erythritol. (Compl. at ¶¶ 18-19.) These allegations are not plausible and carry no weight.

The Product label accurately lists both monk fruit and erythritol as ingredients. It does not make any affirmative representations about the product ingredient proportions or which ingredient serves as the "primary" sweetener. This is fatal to Plaintiff's statutory claims. *See Martinez v. Mead Johnson & Co., LLC*, 2022 WL 15053334, at *5 (C.D. Cal. Oct. 22, 2022) ("[Plaintiff] alleges that she reasonably relied on the 'Milk-based' label to expect that milk was the primary ingredient by weight in the [defendant's] products . . . [Plaintiff] otherwise alleges no factual support for why a reasonable consumer would narrowly interpret a ***something***-based label to mean that ***that something*** must contribute the most to the product's weight, relative to any other ingredient") (emphasis in original).

Plaintiff's suggestion that the Product actually contains "0.87% monk fruit

- 18 -

4902-1191-6170

extract and 99.13% erythritol" does not make the label misleading. (Compl. at ¶ 20.) Plaintiff himself admits that "monk fruit extract is 100-250 times sweeter than sugar." (*Id.* at ¶ 21.) In order for the Product to serve as a 1:1 sugar substitute, it follows that there must be a significantly smaller amount of monk fruit extract to make up for its potency. (*See* Compl. at ¶¶ 14, 21.) Furthermore, the FDA requires that products list ingredients in descending order by weight. *See* 21 C.F.R. § 101.4(a)(1). Organic erythritol is listed first and organic monk fruit extract is listed second. (Compl. at ¶ 14.) Reasonable consumers that consume monk fruit extract understand its potency and would not be misled by the presence of organic erythritol in the Products. *See Moore v. Trader Joe's Co*, 4 F.4th 874, 886 (9th Cir. 2021) (holding that reasonable consumers would "necessarily require more information" before they could reasonably conclude that that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar). For these reasons, Plaintiff's consumer deception claims based on the amount of monk fruit are implausible as a matter of law. *See Becerra*, 945 F.3d at 1229-30 (9th Cir. 2019) (plaintiff cannot allege "plausible misunderstanding of [a] word" different from "common understanding"); *e.g.*, *Elbaz v. Vitals Int'l Grp.*, 2018 WL 5868739, at *3-4 (C.D. Cal. Apr. 10, 2018) (finding no deception where "[a] consumer would have to ignore half of the representation" to adopt plaintiff's proffered interpretation and dismissing UCL, FAL, and CLRA claims); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (affirming dismissal of UCL, FAL, CLRA, and unjust enrichment claims because the plaintiff "has not alleged, and cannot allege, facts to state a plausible claim that the Sugar label is false, deceptive, or misleading"). Plaintiff's UCL, FAL, and CLRA claims must be dismissed as a matter of law.

> ### b. The Label is Not Misleading Because the Product Does Not Contain Artificial or Synthetic Erythritol

The Product's labels are also not misleading as a matter of law because the product does not contain artificial erythritol. It is not reasonable for a consumer to

4902-1191-6170

maintain beliefs affirmatively dispelled by a product's label. *See Karabas v. TC Heartland LLC*, 770 F. Supp. 3d 454, 468 (E.D.N.Y. 2025) (holding "all natural" language in Splenda sweetener containing erythritol was not deceptive because reasonable consumers would not conclude the product contained artificial ingredients).

Plaintiff argues that erythritol is synthetically manufactured. (Compl. at ¶ 29.) While that may be true in some cases, the erythritol used in the Product is organically sourced—as confirmed by the QAI certification. It is therefore not misleading to advertise the Product as containing "nothing artificial" or being "sweetened by nature." The Product label discloses that the erythritol is organic and the Product is certified as organic by the QAI.[1] (Compl. at ¶ 14.) Reasonable consumers reading the Product label understand that organic erythritol is not a synthetic or artificial ingredient. Plaintiff's allegations to the contrary are conclusory and implausible.

**B.   Plaintiff Fails to State a Claim for Breach of Express Warranty and Breach of Implied warranty**

To prevail on a breach of express warranty claim, a plaintiff must prove that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013); *see also Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th. Cir. 1997) ("To prevail on a theory of breach of express warranty, [plaintiff] must prove that [defendant] made affirmations of fact or promises that became part of the basis of the bargain."). This requires "a specific and unequivocal written statement." *Id.* at 1181. "A plaintiff who claims a breach of the implied warranty of merchantability must show that the

---

[1] *See also* https://www.fda.gov/food/nutrition-food-labeling-and-critical-foods/use-term-natural-food-labeling ("The FDA has considered the term 'natural' to mean that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in that food.").

- 20 -

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

product 'did not possess even the most basic degree of fitness for ordinary use.'" *Viggiano*, 944 F. Supp. 2d at 896.

Plaintiff's breach of express warranty claim fails because "the representations do not amount to an unequivocal statement or promise to the consumer" that the literal amount of the monk fruit in the Product would be a certain percentage. Further, any "affirmations" from the Product labels do not constitute breaches of a warranty because the representations on the labels are true. The labels simply describe the Product as a monk fruit sweetener with nothing artificial. The back of the Product accurately lists the ingredients. Such truthful descriptions cannot be express or implied breaches of warranty because there is no falsity contained in the labels. *See Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 905 (N.D. Cal. 2021) (rejecting breach of express warranty claim with respect to Vitamin C gummies where the representations on the product label with respect to dosages were true).

When a plaintiff's express and implied warranty claims are predicated on the same alleged "affirmation of fact or promise," the implied warranty claim "rises and falls" with the express warranty claim. *See id.* Because Plaintiff's express warranty claim fails, so does his implied warranty claim.

Plaintiff's implied warranty claim fails for the additional reason that there is no privity between Plaintiff and WNB. Plaintiff alleges that he "purchased the Product at a Walmart retail store in Los Angeles County in or around 2025[.]" (Compl. at ¶ 30.) Under California law, a plaintiff must plead and prove that he directly purchased the product at issue from the defendant, thus creating a contractual relationship between the parties. *McGarity v. Sun-Maid Growers of California*, 801 F. Supp. 3d 1120, 1131 (S.D. Cal. 2025) ("An end consumer who buys from a retailer is not in privity with a manufacturer.") While an exception to the privity rule exists with respect to certain foodstuffs, this exception "only applies only to claims for breach of the implied warranty of fitness for human consumption," which Plaintiff does not allege here. *See generally Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

1276, 1288 (N.D. Cal. 2024). Since Plaintiff lacks privity with WNB, he cannot state an implied warranty claim and this claim must also be dismissed with prejudice.

**C.      Plaintiff Fails to State a Claim for Negligent Misrepresentation and Intentional Misrepresentation**

To state a claim for intentional misrepresentation under California law, Plaintiff must establish: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage*." Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (Cal. 2004). Negligent misrepresentation differs in that it "does not require scienter or intent to defraud." *See Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173-74 (Cal. 2003) (quotation omitted). Common law fraud claims differ from consumer protection statutes in that "a common law fraud deception must be actually false." *In re Actimmune Mktg. Litig.*, WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).

**1.      Plaintiff Does Not Allege an Actionable Misrepresentation**

Plaintiff's negligent misrepresentation and intentional misrepresentation claims fail because there is no misrepresentation on the Product's labels. Plaintiff contends that WNB misrepresented material facts, such as the product being "primarily sweetened" with artificial erythritol. (Compl. at ¶¶ 118, 126.) But these allegations are conclusory and demonstrably false. As outlined above, the Product does not contain any artificial sweeteners and monk fruit extract is the primary sweetener. The label on the Product is true. Thus, there is no "misrepresentation" upon which Plaintiff may base his misrepresentation claims and the Product "labels do not contain a false affirmation of fact necessary to state a claim under intentional or negligent misrepresentation." *Tarvin v. Olly Pub. Benefit Corp.*, 756 F. Supp. 3d 797, 808 (C.D. Cal. 2024).

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

### 2.     Plaintiff Fails to Plausibly Allege Scienter

Plaintiff fails to plausibly allege that WNB had the requisite scienter for his intentional misrepresentation/fraud claim. Plaintiff has only alleged scienter in a conclusory manner by alleging that WNB "intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product" and that WNB made these representations "with the intent to induce Plaintiff and Class Members to purchase the product[.]" (Compl. at ¶¶ 126, 128.) These conclusory allegations of scienter are insufficient without supporting facts that allow the Court to draw the reasonable inference that WNB knew its labeling was misleading. *See Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (finding plaintiff had "not alleged specific facts that allow the court to draw the reasonable inference that [the defendant] knew it was issuing misleading advertisements at the time [the plaintiff] purchased his laptop.") (cleaned up and citations omitted); *Graham v. Andros Foods USA, Inc.*, 2025 WL 3190647, at *11 (C.D. Cal. Aug. 12, 2025) (dismissing claims under the UCL, FAL, CLRA, negligent misrepresentation, and intentional misrepresentation when the plaintiff failed to provide facts to plausibly support allegations of scienter).

### D.     **Plaintiff Fails to State a Claim for Quasi-Contract/Unjust Enrichment**

Plaintiff's claim for quasi-contract and unjust enrichment also fails. As a preliminary matter, California law does not recognize an independent cause of action for unjust enrichment. *See In re Apple & AT&T Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011). Furthermore, a plaintiff cannot assert an unjust enrichment claim that is merely duplicative of statutory or tort claims for deceptive advertising. *See id.* Finally, a plaintiff cannot invoke state law to assert an unjust enrichment claim while simultaneously alleging the existence of an express warranty. *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1159 (S.D. Cal. 2021) ("the Court finds that Plaintiffs cannot bring a California quasi-contract claim

4902-1191-6170

while bringing an express warranty claim"). In this case, Plaintiff asserts unjust enrichment as an independent cause of action and the factual bases underlying this claim are duplicative of his other statutory and tort claims for deceptive advertising. Since California law does not recognize an independent cause of action for unjust enrichment and Plaintiff has also asserted a claim for breach of express warranty, the Court should dismiss Plaintiff's unjust enrichment claim without leave to amend.

### E.    Plaintiff Lacks Standing to Seek Injunctive Relief

Plaintiff lacks standing to seek injunctive relief in connection with his claims. (Compl. at ¶ 46.) "To have standing to obtain injunctive relief, a plaintiff must allege that a 'real or immediate threat' exists that he will be wronged again." *Rahman v. Mott's LLP*, 2014 WL 325241, *10 (N.D. Cal. Jan. 29, 2014). "The alleged threat cannot be 'conjectural' or 'hypothetical.'" *Id.* ("[T]o establish standing, plaintiff must allege that he intends to purchase the products at issue in the future.").

Here, Plaintiff fails to allege that he intends to purchase the Product in the future. In fact, Plaintiff states he "will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the Product again although he would like to." (Compl. at ¶ 39.) Because Plaintiff lacks standing to seek injunctive relief on behalf of himself, he also lacks standing to seek injunctive relief on behalf of the general public.

### F.    The Court Should Strike Plaintiff's Nationwide Class Allegations.

In the event the Court declines to dismiss Plaintiff's claims outright, the Court must, at minimum, strike Plaintiff's claims for breach of implied warranty, negligent misrepresentation, intentional misrepresentation/fraud, and quasi-contract/unjust enrichment because Plaintiff cannot pursue these claims on behalf of a nationwide class.

While courts often reserve judgment on class claims until a motion for class certification, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within

- 24 -

4902-1191-6170

the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Courts may strike class allegations at the pleading stage when "it is apparent from the pleadings that the class cannot be certified." Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1383 (3d ed.). "[P]ermitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Id*.

Here, Plaintiff seeks to represent a nationwide class of "[a]ll U.S. citizens who purchased the Product in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated." (Compl. at ¶ 50.) Plaintiff does not identify what the "applicable statute of limitations period" is, and he fails to specify in which states persons purchased the products.

Choice of law principles preclude Plaintiff from representing a nationwide class. Because Plaintiff is a California resident who brings claims arising out of transactions in California, he can only assert claims based on California law. And since Plaintiff's nationwide class claims depend on the application of disparate state law in forty-nine other jurisdictions, those claims should be stricken.

The Ninth Circuit confirmed as much in the seminal case on this issue, *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) (overruled on other grounds). In *Mazza*, the plaintiff attempted to certify a nationwide class of car purchasers, asserting that the defendant had misrepresented characteristics of the cars' braking system. *Id*. at 585. After the district court granted class certification, the Ninth Circuit reversed, holding that it was an abuse of discretion to certify a nationwide class that covered "different jurisdictions with materially different consumer protection laws." *Id*. at 590.

In reaching this conclusion, the court performed a three-step analysis. First, it assessed "whether the relevant law of each of the potentially affected jurisdictions . . . [was] the same or different." *Id*. at 590. Second, it "examine[d] each jurisdiction's

- 25 -

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

interest in the application of its own law . . . to determine whether a true conflict exist[ed]." *Id*. And third, it determined whether states' interests would be "impaired if [their] policy were subordinated to the policy of the other state[s]." *Id*.

While *Mazza* addressed a motion for class certification, courts regularly apply the *Mazza* analysis at the pleading stage to strike nationwide class claims. *See Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, at *8 (C.D. Cal. Apr. 10, 2018) (striking nationwide class claims because of "material differences in the consumer protection laws, warranty laws, unjust enrichment laws, and fraudulent concealment laws between California and the other forty-nine states"); *McKinney v. Corsair Gaming, Inc.*, 646 F.Supp.3d 1133, 1145 (N.D. Cal. 2022) (same). "[T]he principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss." *Frezza v. Google Inc.*, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013); *see also Jackson v. Suzuki Motor of Am., Inc.*, 2024 WL 3914666, at *8 (C.D. Cal. July 9, 2024) ("[N]umerous courts . . . have held that district courts should apply *Mazza* at the pleading stage."). The *Mazza* framework fundamentally depends on an analysis of state laws, something that does not require any fact discovery to develop. *See id*.

### 1. Conflicting State Laws Make Nationwide Class Certification Improper.

State laws conflict with respect to Plaintiff's claims for breach of implied warranty, intentional misrepresentation/fraud, and unjust enrichment. Thus, nationwide class treatment is inappropriate under *Mazza*.

As multiple courts have held, state implied warranty laws vary greatly, making nationwide class treatment inappropriate. *See Vinci*, 2018 WL 6136828, at *8 (collecting cases and explaining that "there are material differences between California warranty law and all the other states' warranty laws").

Most notably, states diverge with respect to whether they require privity between the plaintiff and the defendant to establish an implied warranty claim. As

- 26 -

noted above, some states—like California—require privity between the plaintiff and the defendant. *See Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695 (1954). Other states do not. *See Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *12 (N.D. Cal. Aug. 15, 2016) ("Alaska, Colorado, Louisiana, Michigan, Nebraska, New Jersey, Pennsylvania, and Texas do not require privity, while Alabama, Arizona, Connecticut, Florida, Idaho, Illinois, Iowa, Kentucky, New York, North Carolina, Ohio, Oregon, Tennessee, Vermont, and Wisconsin do.").

This wedge among state laws prevents Plaintiff from asserting implied warranty claims on behalf of a nationwide class. *See Czuchaj v. Conair Corp.*, 2016 WL 1240391, at *2-3 (S.D. Cal. Mar. 30, 2016) (explaining that "[w]hether privity is required is material" in rejecting a nationwide implied warranty class). Allowing Plaintiff to proceed would potentially allow "purchasers who did not buy directly from [WNB] to recover, even though they could not recover if their own states' laws were applied." *Darise*, 2016 WL 4385849, at *13.

The same is true with respect to Plaintiff's negligent misrepresentation and intentional misrepresentation/fraud claim—material differences in state law preclude nationwide class treatment. Some states require scienter, other do not, some have a clear and convincing evidence standard, other states have a preponderance of evidence standard. *See, e.g.*, *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1101 (C.D. Cal. 2012). And statutes of limitation vary widely from state-to-state, ranging from one year in some states to six years in other states. *Compare Winn Fuel Serv., Inc. v. Booth*, 34 So.3d 515, 519 (La. Ct. App. 2010) (one year), *with Siegemund v. Shapland*, 247 F.Supp.2d 1, 7 (D. Me. 2003) (six years). Material differences in state fraud laws therefore prevents Plaintiff from asserting an intentional misrepresentation/fraud claim on behalf of a nationwide class. *See Vinci*, 2018 WL 6136828, at *8 (striking a proposed nationwide fraud class).

Variations among state unjust enrichment laws likewise prevent nationwide class treatment of Plaintiff's unjust enrichment claim. *See Mazza*, 666 F.3d at 591

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state."); *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015) (rejecting a nationwide unjust enrichment class because of material variations in state laws); *Jackson*, 2024 WL 3914666, at *8 (same).

Unjust enrichment laws vary widely from state to state. Some states require the plaintiff to have conferred a direct benefit on the defendant whereas other jurisdictions do not. *Compare Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D. 1999) (requiring a direct benefit conferred by the plaintiff to the defendant to maintain an unjust enrichment claim), *with Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 853 (N.D. Ill. 2006) (rejecting an argument that privity was required to assert an unjust enrichment claim). Statutes of limitations also vary significantly amongst jurisdictions. *See Desai v. Franklin*, 2008-Ohio-3957, ¶ 15 (applying six-year limitations period); *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶¶ 42-43 (Mont. 2013) (applying three-year statute of limitations). And some states, like California, do not recognize unjust enrichment as an independent cause of action in the first place. *See In re Apple & AT&T Unlimited Data Plan Litig.*, 802 F. Supp. 2d at 1077 (citing *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 794 (2003)).

Each of these variances matter here. Plaintiff cannot maintain a nationwide class for half of his claims.

**2.    Each State Has an Interest in Applying its Own Laws to the Claims Asserted, and True Conflicts Therefore Exist**

The second consideration in the *Mazza* analysis—the states' interests in applying their own laws to the claims asserted—confirms that Plaintiff's nationwide class claims should be stricken. When claims involve allegations of misrepresentations, omissions, or false advertising in consumer transactions, "each state has a strong interest in applying its own consumer protection laws to those transactions" *Mazza*, 666 F.3d at 592. For that reason, courts frequently strike

- 28 -

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

nationwide class claims that, at their core, involve allegations that a defendant misled consumers. *See*, *e.g.*, *Vinci*, 2018 WL 6136828, at *9 ("[F]oreign states obviously have an interest in having their own laws applied to the consumer transactions that took place within their borders."); *McKinney*, 646 F.Supp.3d at 1143 (striking nationwide consumer protection claims with prejudice).

Here, states have a strong interest in applying their own negligent misrepresentation and intentional misrepresentation/fraud, quasi-contract/unjust enrichment, and implied warranty laws to the consumer transactions that occurred within their borders. Allowing one California resident to represent a nationwide class involving foreign transactions would undercut those states' interests. Thus, the second *Mazza* prong strongly favors striking Plaintiff's nationwide class claims.

### 3. States' Interests Would Be Impaired by Applying Other States' Laws

The third *Mazza* prong—whether states' interests would be impaired by applying other states' laws—also supports striking Plaintiff's nationwide class claims. *See Mazza*, 666 F.3d at 593 (holding that "states would be impaired in their ability to calibrate liability to foster commerce" if foreign laws governing consumer transactions were imposed on them). When it comes to consumer transactions, "every state would be impaired in its ability to protect the consumers within its borders if California law were applied to all claims of the nationwide class." *Davison v. Kia Motors Am., Inc.*, 2015 WL 3970502, at *3 (C.D. Cal. June 29, 2015). For that reason, "each plaintiff's individual claims must be governed by the laws of their home state." *Vinci*, 2018 WL 6136828, at *10. Plaintiff's nationwide class claims should be stricken.

### V. CONCLUSION

For the foregoing reasons, WNB's Motion should be granted and Plaintiff's claims should be dismissed with prejudice.

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

Dated: February 25, 2026                    SNELL & WILMER L.L.P.


By: */s/ Daniel S. Wittenberg*
Daniel S. Wittenberg
Andrew S. Green

Attorneys for Defendant
WISDOM NATURAL BRANDS

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

**Certificate of Compliance**

The undersigned, counsel of record for Defendant, certifies that this brief contains 6331 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 25, 2026

/s/ *Daniel S. Wittenberg*
Daniel S. Wittenberg

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 25, 2026, a true and correct copy of the foregoing **DEFENDANT WISDOM NATURAL BRANDS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** was filed electronically with the Clerk of the above-captioned Court utilizing the Court's CM/ECF system, resulting in an automatic transmission of a Notice of Electronic Filing to all counsel of record in the above-referenced proceeding.

*/s/ Rachael Sandoval*
SNELL & WILMER L.L.P.

MOTION TO DISMISS COMPLAINT
2:25-CV-12080-CV(RAOX)

4902-1191-6170