**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

***Attorneys for Plaintiff and the Proposed Class***

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JOHN BOYD, individually and on behalf of all others similarly situated,

Plaintiff,

v.

WISDOM NATURAL BRANDS,

Defendant.

Case No. 2:25-cv-12080-CV(RAOx)

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff John Boyd ("Plaintiff"), on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant Wisdom Natural Brands ("Defendant") and, upon information and belief and investigation of counsel, alleges as follows:

## I. INTRODUCTION

1. Defendant makes, distributes, sells, and markets Sweet Leaf Monk Fruit Organic Sweetener (the "Product").[1]

2. Defendant misleadingly labels the Product as a "monk fruit" sweetener when in fact the Product contains less than 1% monk fruit extract and is primarily sweetened with erythritol.

3. Despite being labeled as a "monk fruit" sweetener, the Product's rear label ingredient list reveals that erythritol is the most prominent ingredient in the Product.

4. According to independent laboratory testing commissioned by Plaintiff's counsel, the Product contains 99.13% erythritol and only 0.87% monk fruit extract.

5. Reasonable consumers purchase the Product because they want a premium sweetener that is derived from natural monk fruit. The truth, however, is that the Product is almost completely comprised of erythritol, a sugar alcohol that can lead to multiple side effects, including digestive problems, diarrhea, bloating, cramps, gas, nausea, and headaches, and that has been linked to an increased risk of heart attack and stroke. Consumers are being deceived and overcharged.

6. Plaintiff read and relied upon Defendant's advertising when purchasing the Product and was damaged as a result.

7. Plaintiff brings this action on behalf of himself and all other similarly

[1] The Product is available for purchase in packets, bags, or a canister. *See* https://www.sweetleaf.com/collections/monk-fruit-hot-cold-drink-sweeteners

situated consumers in California, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law, §§ 17500 *et seq*. ("FAL"). Plaintiff brings further causes of action for breach of express and implied warranties, negligent misrepresentation, intentional misrepresentation/fraud, and quasi-contract/unjust enrichment.

8. Plaintiff seeks an order compelling Defendant to (a) cease marketing the Product using the misleading and unlawful tactics complained of herein, (b) destroy all misleading deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution damages and punitive damages, as allowed by law.

## II. JURISDICTION AND VENUE

9. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

10. The court has personal jurisdiction over Defendant. Defendant purposely availed itself to California because Defendant does business within this judicial district, sells the Product in this judicial district, and is committing the acts complained of below within this judicial district.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the injury in this case substantially occurred in this District. Defendant has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Product in this District, and is subject to personal jurisdiction in this District.

## III. PARTIES

12. Defendant Wisdom Natural Brands is an Arizona corporation with a

principal place of business located at 1203 W. San Pedro St., Gilbert, Arizona, 85233. Defendant makes, labels, distributes, sells, and markets the Product in California. Defendant is responsible for the making, labelling, distribution, selling, and marketing of the Product throughout the applicable statute of limitations period.

13. Plaintiff John Boyd ("Plaintiff") is a resident of California and purchased the Product at a Walmart retail store in Los Angeles county in or around 2025. Plaintiff saw the misrepresentations made on the Product label prior to and at the time of purchase and understood them as representations and warranties that the Product was a monk fruit sweetener. Plaintiff relied on the representations made on the Product label in deciding to purchase the Product. These representations and warranties were part of his basis of the bargain, in that he would not have purchased the Product, or would only have been willing to purchase the Product at a lower price, had he known the representations were false. Plaintiff would consider purchasing the Product again if the advertising statements made on the Product label were, in fact, truthful and represented in a manner as not to deceive consumers.

## IV. NATURE OF THE ACTION

14. Images of the Product's front and rear labels are reproduced below:

//

//

//

//

//

//

//

//

//

//

//


ZERO CALORIES | SWEETENED BY NATURE
SweetLeaf
USDA ORGANIC
NON GMO Project VERIFIED
MONK FRUIT
ORGANIC SWEETENER
GRANULAR
0 CALORIES
0 SUGARS
NOTHING ARTIFICIAL
KETO FRIENDLY
1:1 SUGAR SUBSTITUTE
TASTES & BAKES LIKE SUGAR
NET WT 8.47 OZ (240g)

//

//

//

//

//




15. The Product's front label prominently represents in capital letters that the Product is a "MONK FRUIT ORGANIC SWEETENER" and contains "0 SUGARS." The front label also contains an image of what appears to be a Buddhist monk.

16. The front label further represents that the Product is "SWEETENED BY NATURE" and contains "NOTHING ARTIFICIAL." The front label also contains images of natural leaves.

17. Defendant's representations are prominently and conspicuously

displayed in large, bold font to grab the consumer's attention.

18. Defendant's advertising misleads reasonable consumers into believing that the Product is entirely, or at the very least predominantly, sweetened with monk fruit.

19. However, contrary to the labeling, the Product contains almost no monk fruit and instead primarily contains a sweetener ingredient called erythritol.

20. Independent laboratory testing found that the Product contains only 0.87% monk fruit extract and 99.13% erythritol.

21. The Product's front label advertises the Product as a "1:1 sugar substitute." However, monk fruit extract is 100-250 times sweeter than sugar, while erythritol is only 60-70% as sweet as sugar. Defendant therefore uses erythritol as a bulk filler and adds less than 1% of monk fruit to the Product to boost sweetness – yet markets the Product as a natural "monk fruit" sweetener.

22. As a result, Defendant has charges consumers a premium for the Product, while cutting costs and reaping the financial benefits of selling a Product with almost no natural monk fruit.

23. The label misrepresentations are material to reasonable consumers, including Plaintiff.

24. Monk fruit sweetener is made from the extract of the Luo Han Guo fruit.[2] Monk fruit is known to be high in antioxidants and considered a more premium sweetener than erythritol. *Id*. Monk fruit sweetener is considered safe to consume and without adverse effects. *Id*.

25. By contrast, erythritol is a sugar alcohol that can cause bloating or stomach upset. *Id*. Ingestion of erythritol, like other sugar alcohols, can lead to

---

[2] Cleveland Clinic, Is Monk Fruit A Healthy Sweetener? https://health.clevelandclinic.org/whyyou-should-use-monk-fruitsweetener/#:~:text=Monk%20fruit%20is%20a%20small,its%20mogroside%20from%20the%20juice.

multiple side effects, including digestive problems, diarrhea, bloating, cramps, gas, nausea, and headaches.[3] The National Institute of Health (NIH) reports that erythritol and several related artificial sweeteners were associated with the risk for cardiovascular events, consuming erythritol can increase blood clot formation, and could increase the risk of heart attack or stroke.[4]

**DEFENDANT'S COMPETITORS LAWFULLY LABEL THEIR PRODUCTS**

26. Defendant not only deceived consumers but also gained an unfair commercial advantage in the marketplace by marketing and distributing a misbranded product.

27. Manufacturers and distributors of competing monk fruit products label their products lawfully.

28. Defendant's competitors lawfully label their monk fruit sweetener products as "with erythritol" or other sweeteners where monk fruit is not the sole or primary sweetener. For example, Lakanto advertises its Monk Fruit Sweetener product as "with erythritol" on the product's front label where the product contains both monk fruit and erythritol.[5] Likewise, the front label of the Monk Fruit In the Raw Zero Calorie Sweetener product discloses that the product contains "monk fruit blended with erythritol."[6] Whole Earth's monk fruit sweetener product is advertised

---

[3] https://www.meritagemed.com/erythritol/#:~:text=Erythritol%20side%20effects%20typically%20includ

[4] https://www.nih.gov/news-events/nih-research-matters/erythritol-cardiovascular-events#:~:text=For%20at%20least%20two%20days,aren't%20hidden%20contributors.%E2%80%9D

[5] https://www.walmart.com/ip/Lakanto-Classic-Monk-Fruit-Sweetener-White-Sugar-Substitute-2-lbs-1-Count/14807170878?classType=VARIANT&adsRedirect=true

[6] https://www.safeway.com/shop/product-details.970002284.html?productId=970002284&CMPID=ps_swy_noc_ecom_goo

as "with erythritol" on the product's front label.[7] Walmart's Great Value brand also offers a monk fruit sweetener product advertised as a "Monk Fruit & Erythritol Sweetener."[8] Truvia's Monk Fruit sweetener product is advertised as a "calorie-free sweetener with monk fruit and erythritol."[9] Health Garden's Monk Fruit Sugar Substitute Sweetener product is similarly advertised as "with erythritol" on the product's front label.[10]

29. Other competing manufacturers sell monk fruit products that solely contain monk fruit, and no other sweeteners. For example, Teaki Hut sells a monk

_20241106_21877483437_167345920942_2369148590109&psrc=g&gclsrc=aw.ds&gad_source=4&gad_campaignid=21877483437&gbraid=0AAAADek7AgddHJUFr1_WCDrk1RBU61yL&gclid=CjwKCAjwpcTNBhA5EiwAdO1S9hJAqhrht0PDZVsfP0Da1bW_9KqAKSalugpx-s09jbOuuWTMk9eVUxoCEw0QAvD_BwE

[7] https://www.instacart.com/products/21023740-whole-earth-sea-sugar-alternative-plant-based-monk-fruit-with-erythritol-12-oz?retailer_id=105&product_id=21023740&region_id=1036754652&utm_medium=sem_shopping&utm_source=instacart_google&utm_campaign=ad_demand_shopping_mixed_catchall_california_evergreen&utm_content=accountid-8145171519_campaignid-19755274999_adgroupid-149557268627_device-c&utm_term=targetid-pla-855649034760_locationid-9032528_adtype-pla_productchannel-online_merchantid-178357517_storecode-_productid-21023740&gad_source=4&gad_campaignid=19755274999&gbraid=0AAAADO98haZez_MVpy2xo2upuluSxhb4&gclid=CjwKCAjwpcTNBhA5EiwAdO1S9qGLRYnJTjdOliKpyVCjKPweDHoOtbo2hh_Uiew-bRJI3NdEWcht9hoCl3IQAvD_BwE&unauth-refresh=1

[8] https://www.walmart.com/ip/Great-Value-Monk-Fruit-Erythritol-Zero-Calorie-Sweetener-16-oz/9748217764?classType=REGULAR&athbdg=L1200&from=/search

[9] https://www.walmart.com/ip/Calorie-Free-Sweetener-from-Monk-Fruit-Spoonable-9-8-oz-Jar/1538752907?classType=REGULAR&from=/search

[10] https://www.walmart.com/ip/Health-Garden-Monk-Fruit-Sweetener-Golden-48-0-oz/51985023?classType=VARIANT&from=/search

fruit extract powder where the sole ingredient is monk fruit:[11] Durelife's Organic Monk Fruit Extract product also only contains organic monk fruit and no erythritol.[12]

30. Defendant, however, conceals the use of erythritol in the Product, deceiving consumers and competing unfairly and unlawfully in the marketplace, hurting its competitors as well as consumers.

31. Defendant's conduct injures competing manufacturers and distributors that do not engage in the same unlawful conduct. These manufacturers and distributors compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars. Defendant's competitors do so lawfully. Defendant does not.

**PLAINTIFF'S PURCHASES, RELIANCE, AND INJURY**

32. Plaintiff John Boyd purchased the Product at a Walmart retail store in Los Angeles County in or around 2025 in reliance on the Product's front label advertising.

33. In deciding to purchase the Product, Plaintiff read and relied on the Product's front label representations, which led Plaintiff to believe that the Product

---

[11] https://www.amazon.com/TEAki-Hut-Sweetener-Substitute-Friendly/dp/B08KGYJ4TL/ref=sr_1_1_sspa?keywords=pure+monk+fruit&qid=1679263838&sr=

[12] https://www.walmart.com/ip/Durelife-Organic-100-Pure-Monk-Fruit-sweetener-No-Erythritol-Monkfruit-Extract-Powder-USDA-organic-NON-GMO-Project-Verified-Keto-Certified-OU-kosher/5329803378?wmlspartner=wlpa&selectedSellerId=101220500&selectedOfferId=D070EF0054083FE3B7B8F1871AE277C0&conditionGroupCode=1&sourceid=dsn_gdn_2005b0c9-e4c7-4f46-8aaa-443883a5e447&veh=dsn&wmlspartner=dsn_gdn_2005b0c9-e4c7-4f46-8aaa-443883a5e447&cn=00c3_fy27_mp_mp_lo_int_dis_pmax-main&wl9=pla&wl11=online&gad_source=4&gad_campaignid=23143211640&gbraid=0AAAADmfBIqzALj1JTRTCn9uvClBnNccr&gclid=CjwKCAjwpcTNBhA5EiwAdO1S9vjdWB90F5hgAB2P53rnm7v5tknnw7w8iNIjFpMgkgsno4dYFnSJFhoCsLUQAvD_BwE

was primarily a monk fruit sweetener. At the time of purchase, Plaintiff did not know that Defendant's representations were false and misleading, and that the Product contained less than 1% monk fruit extract.

34. Plaintiff would not have purchased the Product, or would not have paid as much as he did, had he known that the Product contained only a negligible amount of monk fruit. Plaintiff paid a premium for the Product due to the misleading labelling on the Product's packaging.

35. The representations on the Product's label were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class).

36. Plaintiff acted reasonably in relying on the challenged claims that Defendant intentionally, prominently, and uniformly placed on the Product's label and packaging with the intent to induce average consumers into purchasing it.

37. Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the violations were known to Defendant, and not to him throughout the Class Period herein.

38. Plaintiff paid more for the Product, and would only have been willing to pay less or unwilling to purchase it at all, absent the false and misleading labeling statements complained of herein.

39. For these reasons, the Product was worth less than what Plaintiff paid for it.

40. Plaintiff would like to, and would consider, purchasing the Product again when he can do so with the assurance that the Product's labels are truthful and consistent with the Product's ingredients.

41. Plaintiff will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the Product again although he would like to.

42. Plaintiff lost money as a result of Defendant's deceptive claims and practices in that he did not receive what he paid for when purchasing the Product.

43. Plaintiff detrimentally altered his position and suffered damages in an amount equal to the premium he paid for the Product.

44. The senior officers and directors of Defendant allowed the Product to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

## NO ADEQUATE REMEDY AT LAW

45. Plaintiff seeks damages and, in the alternative, equitable restitution. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists.

46. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Product more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

47. The scope of actionable misconduct under the unfair prong of the UCL is also broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Product over a long period of time in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of Product at issue). This is especially important here because Plaintiff alleges Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Plaintiff's UCL unlawful prong claim does not rest on the same conduct as his other causes of action, and there is no adequate remedy at law for this specific unlawful claim. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of Plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or

services for personal, family, or household purposes) and other statutorily enumerated conduct).

48. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to omit material facts about the Product. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's labeling misrepresentations are untrue and providing accurate information about the Product's true nature; and/or requiring prominent disclaimers on the Product's front labels concerning the Product's true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, damages will not adequately benefit the general public in a manner equivalent to an injunction.

49. Moreover, a legal remedy is not adequate if it is not as certain as an equitable remedy. Here, Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from his purchases of the Product are determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff and class members would be left without the parity in purchasing power to which they are entitled.

50. By the same token, Plaintiff's common law claims require additional showings, compared to the UCL, FAL, or unjust enrichment claims. For example, to prevail on a breach of warranty claim, Plaintiff must show that the challenged statements constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required by the UCL or FAL, or for an unjust enrichment theory. In fact, the UCL and the FAL were enacted specifically to create new claims and remedies not available at common law. And unjust enrichment exists in part because contractual claims are often more difficult to establish. In this way, Plaintiff's UCL and FAL claims, and Plaintiff's unjust enrichment claims, are more certain than their legal claims.

51. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## V. CLASS ACTION ALLEGATIONS

52. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following Class:

**The California Class**
All California citizens who purchased the Product in California for personal and household use and not for resale within the applicable statute of

limitations and until the date class notice is disseminated.

53. Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclass or limitation to particular issues as discovery and the orders of this Court warrant.

54. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

55. The members in the proposed Class are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least in the hundreds and members of the Class are numerous. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

56. Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Product appropriate with respect to the Class as a whole. In particular, Defendant has failed to disclose the true nature of the Product being marketed as described herein.

57. There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Class and these common questions of fact and law include, but are not limited to, the following:

- Whether Defendant breached any express warranties made to Plaintiff and the Class;

- Whether Defendant breached any implied warranties made to Plaintiff and the Class;
- Whether Defendant violated consumer protection statutes, false advertising statutes, or state deceptive business practices statutes;
- Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of the Product;
- Whether reasonable consumers are likely to be misled by Defendant's advertising and labeling of the Product;
- Whether the Product's challenged representations are material representations made to reasonable consumers;
- Whether the proposed class is suitable for class certification;
- The proper amount of restitution, damages, and punitive damages;
- The proper injunctive relief, including a corrective advertising campaign;
- The proper amount of attorneys' fees.

58. These common questions of law and fact predominate over questions that affect only individual Class Members.

59. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Product, and suffered economic injury because the Product were and still are misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Product, Plaintiff and Class Members would not have purchased the Product, or would have paid less for them.

60. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has

retained counsel with substantial experience in handling complex consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

61. Plaintiff and the members of the Class suffered, and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

62. Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

63. Defendant has acted on grounds applicable to the Class, thereby making appropriate final public injunctive and declaratory relief concerning the Class as a whole.

64. As a result of the foregoing, class treatment is appropriate.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act

**Cal. Civ. Code §§ 1750, *et seq*.**

65. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein

66. Plaintiff brings this claim under the CLRA individually and on behalf of the California Class against Defendant.

67. At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

68. At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

69. At all relevant times, the Product manufactured, distributed, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

70. The purchases of the Product by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

71. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Product's labeling that the Product was a "monk fruit" sweetener. Defendant failed to disclose that the Product primarily contains erythritol. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Product contains less than 1% monk fruit extract to be important to their decision in purchasing the Product. Defendant's representations violate the CLRA in the following ways:

a. Defendant represented that the Product has characteristics, ingredients, uses, and benefits which it does not have (Cal. Civ. Code § 1770(a)(5));
b. Defendant represented that the Product is of a particular standard, quality, or grade, which it is not (Cal. Civ. Code § 1770(a)(7));
c. Defendant advertised the Product with an intent not to sell the Product as advertised (Cal. Civ. Code § 1770(a)(9)); and

d. Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

72. Defendant violated the CLRA because the Product was prominently advertised as being a "monk fruit" sweetener, but the Product contains less than 1% monk fruit extract and primarily contains erythritol. Defendant knew or should have known that consumers would want to know that the Product contains almost no monk fruit.

73. Defendant's actions as described herein were done with conscious disregard of Plaintiff' and the Class members' rights and were wanton and malicious.

74. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Product has characteristics which it does not have.

75. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

76. Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

77. More than thirty days have passed since Plaintiff sent Defendant a CLRA letter, and Defendant has failed to take the corrective action described therein. Wherefore, Plaintiff seeks actual, punitive, and statutory damages as appropriate, as well as attorneys' fees and costs for Defendant's violations of the CLRA.

78. Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

## SECOND CLAIM FOR RELIEF

**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

79. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

80. Plaintiff brings this claim under the UCL individually and on behalf of the California Class against Defendant.

81. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

82. Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

83. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Product contains almost no monk fruit) of which it had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material

omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

84. Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Product set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Product primarily contains monk fruit.

85. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Product. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Product and Defendant's unlawful, unfair, and fraudulent practices.

86. Defendant's wrongful business practices and violations of the UCL are ongoing.

87. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

88. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the California Class, seek (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business &

Professions Code section 17203.

## THIRD CLAIM FOR RELIEF

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

89. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

90. Plaintiff brings this claim under the FAL individually and on behalf of the California Class against Defendant.

91. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" Cal. Bus. & Prof. Code § 17500.

92. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

93. As alleged herein, Defendant falsely advertised the Product by falsely representing that the Product primarily contained monk fruit, when in fact, the Product contains almost no monk fruit and primarily contains the sweetener ingredient erythritol.

94. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased the Product in reliance on Defendant's false and misleading labeling claim that the Product was a "monk fruit" sweetener.

95. Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Product in a manner that is untrue and misleading, which Defendant

knew or reasonably should have known, and omitted material information from its advertising.

96. Defendant profited from its sale of the falsely and deceptively advertised Product to unwary consumers.

97. As a result, Plaintiff, the Class, and the general public are entitled to public injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

98. Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of themselves and the Class, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth herein.

## FOURTH CLAIM FOR RELIEF

### Breach of Express Warranty

### Cal. Com. Code § 2313(1)

99. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

100. Plaintiff brings this claim for breach of express warranty individually and on behalf of all Class against Defendant.

101. As the manufacturer, marketer, distributor, and seller of the Product, Defendant issued an express warranty by representing to consumers at the point of purchase that the Product was a "monk fruit" sweetener.

102. Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Product, including the representation that the Product was a "monk fruit" sweetener.

103. Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class.

104. In fact, the Product does not conform to Defendant's representations

because the Product contains almost no monk fruit. By falsely representing the Product in this way, Defendant breached express warranties.

105. Plaintiff relied on Defendant's representations on the Product's label and advertising materials which provide the basis for an express warranty under California law.

106. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for the Product that was not as Defendant represented; (2) were deprived of the benefit of the bargain because the Product they purchased was different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Product they purchased had less value than if Defendant's representations about the characteristics of the Product were truthful.

107. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and Class Members would not have purchased the Product or would not have paid as much as they did for it.

## FIFTH CLAIM FOR RELIEF

**Breach of Implied Warranty**

**Cal. Com. Code § 2314**

108. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

109. Plaintiff brings this claim for breach of implied warranty individually and on behalf of all Class against Defendant.

110. Plaintiff and the Class purchased the Product manufactured, advertised, and sold by Defendant, as described herein.

111. Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, misrepresented the characteristics of the Product to Plaintiff and the Class.

112. Defendant is a merchant with respect to the goods of this kind which

were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

113. However, Defendant breached that implied warranty in that the Product was a "monk fruit" sweetener containing primarily monk fruit. Instead, the Product contains less than 1% monk fruit and more than 99% erythritol.

114. As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Product did not conform to promises and affirmations made on the label of the Product.

115. Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's price premium.

## SIXTH CLAIM FOR RELIEF

## Negligent Misrepresentation

116. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

117. Plaintiff brings this claim for negligent misrepresentation individually and on behalf of all Class against Defendant.

118. Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Product because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

119. During the applicable class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product, including the fact that the Product is primarily sweetened with erythritol, despite being advertised as a "monk fruit"

sweetener.

120. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Product at a premium price.

121. Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and Class Members would be overpaying for the Product.

122. Plaintiff and Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product.

123. Plaintiff and Class Members would not have purchased the Product or paid as much for the Product if the true facts had been known.

## SEVENTH CLAIM FOR RELIEF

## Intentional Misrepresentation/Fraud

124. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

125. Plaintiff brings this claim for intentional misrepresentation individually and on behalf of all Class against Defendant.

126. Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Product because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

127. During the applicable class period, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product, including that the Product contains almost no monk fruit, despite the Product's "monk fruit" representations. These

representations were material and were uniformly made.

128. As noted in detail above, these representations were false and misleading, as the Product contains almost no monk fruit. Defendant made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

129. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Product at a premium price, deprive Plaintiff and Class Members of property or otherwise causing injury, and thus, Defendant has committed fraud.

130. Defendant's deceptive or fraudulent intent is evidenced by motive and opportunity. Defendant knew that consumers would pay more for a product if they believed it was primarily a monk fruit sweetener. For that reason, Defendant misrepresented the Product so that Defendant could realize greater profits. Defendant knew that consumers would place trust and confidence in its Product's claims and rely thereon in their purchases of the Product.

131. Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Product.

132. As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the Class were induced to purchase the Product at a premium.

133. Plaintiff and the Class Members would not have purchased the Product or paid as much for the Product if the true facts had been known.

134. As a result of their reliance, Plaintiff and Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

135. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and Class Members Plaintiff and Class Members are therefore entitled to

an award of punitive damages.

**EIGHTH CLAIM FOR RELIEF**

**Quasi-Contract/ Unjust Enrichment**

136. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

137. Plaintiff brings this claim for quasi contract/unjust enrichment individually and on behalf of all Class against Defendant.

138. As alleged in detail above, Defendant's false and misleading labelling caused Plaintiff and the Class to purchase the Product at a premium.

139. In this way, Defendant received a direct and unjust benefit, at Plaintiff and the Class's expense.

140. It would be unjust and inequitable for Defendant to retain the above-mentioned benefits. For example, Defendant was only able to charge a premium for the Product by intentionally withholding information from Plaintiff, or otherwise misrepresenting the Product's qualities.

141. Plaintiff and the Class seek restitution.

## VII. PRAYER FOR RELIEF

142. Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as follows:

- For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;
- For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;
- For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so

permitted;

- For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;
- For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and
- For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

143. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 13, 2026 **CROSNER LEGAL, P.C.**

By: */s/ Lilach H. Klein*
Lilach H. Klein

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*lilach@crosnerlegal.com*

***Attorneys for Plaintiff and the Proposed Class***

**Civil Code Section 1780(d) Venue Affidavit**

I, Lilach H. Klein, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3. Defendant has done, and is doing business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the Product.

4. Plaintiff purchased the Product at issue in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on March 13, 2026 in Sacramento, California.

Crosner Legal, P.C.

By: */s/ Lilach H. Klein*
LILACH H. KLEIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*lilach@crosnerlegal.com*

***Attorneys for Plaintiff and the Proposed Class***