Daniel S. Wittenberg, Bar No. 158254
dwittenberg@swlaw.com
Andrew S. Green, Bar No. 316459
asgreen@swlaw.com
SNELL & WILMER L.L.P.
City National 2CAL
350 South Grand Avenue
Suite 3100
Los Angeles, California 90071
Telephone: 213.929.2500
Facsimile: 213.929.2525

Attorneys for Defendant WISDOM NATURAL BRANDS

SNELL & WILMER

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

JOHN BOYD, individually and on behalf of all others similarly situated,

Plaintiff,

v.

WISDOM NATURAL BRANDS,

Defendant.

Case No. 2:25-cv-12080-CV(RAOx)

District Judge: Cynthia Valenzuela
Magistrate Judge: Rozella A. Oliver

**DEFENDANT WISDOM NATURAL BRANDS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with the Declaration of Daniel S. Wittenberg; and [Proposed] Order]*

Date: May 1, 2026
Time: 1:30 p.m.
Dept: 10B

Complaint Filed: December 22, 2025
Trial Date: None Set

TO THE COURT, PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 1, 2026, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Cynthia Valenzuela, in Department 10B of the above-entitled court, located at 350 W 1st St, Los Angeles, CA 90012, Defendant Wisdom Natural Brands ("Defendant") will, and hereby does, move this Court for an Order dismissing Plaintiff John Boyd's ("Plaintiff") First Amended Class Action Complaint (the "Motion").

This Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

1. Plaintiff's California Consumers Legal Remedies Act (the "CLRA") (Count I), California Unfair Competition Law (the "UCL") (Count II), and California False Advertising Law ("the FAL") (Count III) claims fail because Plaintiff does not and cannot allege conduct the labeling on the Sweet Leaf Monk Fruit Organic Sweetener (the "Product") is false, misleading, or deceptive under the reasonable consumer standard. Reasonable consumers understand that the presence of an ingredient in a product is not the same as predominance of that ingredient, any alleged ambiguity or confusion is dispelled by the ingredients panel on the back of the Product, and the Product would cease to function as a sugar substitute if monk fruit extract was the primary ingredient by weight.

2. Plaintiff's claims for Breach of Express Warranty (Count IV) and Breach of Implied Warranty (Count V) fail because Product accurately discloses the ingredients and does not affirmatively state that monk fruit is the predominant sweetener. There is also no privity of contract between Plaintiff and WNB to state an implied warranty claim.

3. Plaintiff's Negligent Misrepresentation (Count VI) and Intentional Misrepresentation/Fraud (Count VII) claims fail because there is no actionable misrepresentation and there is no plausible allegation of scienter.

4. Plaintiff's Quasi-Contract/Unjust Enrichment claim (Count VIII) fails

because California does not recognize an independent claim for unjust enrichment and Plaintiff has alleged the existence of an express warranty.

5. Plaintiff lacks standing to seek injunctive relief because Plaintiff does not state that he will buy the Product in the future.

This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities, supporting Declaration of Daniel S. Wittenberg, all of which are attached hereto, filed, and served herewith, all pleadings, papers, and other documents filed with this Court, and on such other evidence, oral, or documentary, as may be presented at the time of the hearing of this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 19, 2026. (*See* Declaration of Daniel S. Wittenberg ("Wittenberg Decl."), at ¶ 2.) The parties were unable to reach a resolution.

Dated: March 26, 2026

SNELL & WILMER L.L.P.

By: */s/ Daniel S. Wittenberg*
Daniel S. Wittenberg
Andrew S. Green

Attorneys for Defendant
WISDOM NATURAL BRANDS

SNELL & WILMER

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff John Boyd ("Plaintiff") brings this amended putative class action against Wisdom Natural Brands ("WNB") on the grounds that WNB's Sweet Leaf Monk Fruit Organic Sweetener (the "Product") labels are deceptive and misleading because they inflate the amount of monk fruit in the Product. But a simple review of the Product label demonstrates these allegations are wrong. The Product accurately states that the Product is a "Monk Fruit Organic Sweetener." Plaintiff's amended complaint does nothing to rectify the deficiencies of his alleged claims; Plaintiff's First Amended Class Action Complaint ("FAC") should be dismissed without leave to amend.

Plaintiff alleges the Product label is misleading and therefore violates the California Consumers Legal Remedies Act (the "CLRA") (Count I), the California Unfair Competition Law (the "UCL") (Count II), and the California False Advertising Law ("the FAL") (Count III). Plaintiff further contends the Product label breaches express and implied warranties, constitutes negligent and intentional misrepresentation, and constitutes quasi-contract/unjust enrichment. Plaintiff's claims still fail as pleaded.

First, Plaintiff's consumer protection claims do not plausibly allege a cause of action because Plaintiff fails to adequately plead that the Product is materially misleading to a reasonable consumer. The Product labels accurately list monk fruit as an ingredient.

Second, Plaintiff's claims for Breach of Express Warranty (Count IV) and Breach of Implied Warranty (Count V) fail because the Product labels are truthful. There is also no privity between Plaintiff and WNB to state an implied warranty claim.

Third, Plaintiff's Negligent Misrepresentation (Count VI) and Intentional Misrepresentation/Fraud (Count VII) claims fail because there is no actionable

misrepresentation and there is no plausible allegation of scienter.

Fourth, Plaintiff's Quasi-Contract/Unjust Enrichment claim (Count VIII) fails because California does not recognize an independent claim for unjust enrichment and Plaintiff alleges the existence of an express warranty.

Finally, Plaintiff lacks standing to seek injunctive relief because Plaintiff does not state that he will buy the Product in the future.

Plaintiff's conclusory and defective allegations cannot sustain any of his claims against WNB.

## II. SUMMARY OF PERTINENT FACTUAL ALLEGATIONS

### A. Plaintiff Purchases the Product

Plaintiff is a resident of California. (FAC at ¶ 13.) WNB makes, distributes, and sells the Product. (*Id.* at ¶ 1.) Plaintiff alleges that the Product labels are misleading because they state the Product is a "monk fruit" sweetener, but the Product actually "contains less than 1% monk fruit extract" and the primary sweetener is "erythritol." (*Id.* at ¶ 2.)

The front of the Product contains labels that state, "MONK FRUIT ORGANIC SWEETENER," "SWEETENED BY NATURE," and "NOTHING ARTIFICIAL." (*Id.* at ¶¶ 15-16.) Plaintiff does not dispute that the Product contains monk fruit. Instead, Plaintiff alleges these truthful representations "mislead[] reasonable consumers into believing that the Product is entirely, or at the very least predominantly, sweetened with monk fruit." (*Id.* at ¶ 18.)

Plaintiff contends the Product "contains almost no monk fruit and instead primarily contains a sweetener ingredient called erythritol." (*Id.* at ¶ 19.) Specifically, Plaintiff claims the Product only has "0.87% monk fruit extract and 99.13% erythritol." (*Id.* at ¶ 20.) Plaintiff acknowledges, however, that "monk fruit extract is 100-250 times sweeter than sugar." (*Id.* at ¶ 21.) Moreover, Plaintiff admits that the product is advertised as a "1:1 sugar substitute." (*Id.*)

Plaintiff alleges that ingestion of erythritol leads to side effects such as

digestive issues and nausea. (*Id*. at ¶ 25.) Plaintiff further contends that competitors of WNB "label their products lawfully" by including labels such as "with erythritol." (*Id*. at ¶¶ 26-31.) According to Plaintiff, WNB "conceals the use of erythritol in the Product" to gain a commercial advantage, despite the Product label expressly listing "erythritol" as an ingredient in the Product. (*Id*. at ¶¶ 14, 26, 30.)

Plaintiff claims he purchased the Product at a Walmart retail store in Los Angeles County in or around 2025. (*Id*. at ¶ 32.) Plaintiff states that he "read and relied on the Product's front label representations" in believing that the Product "was primarily a monk fruit sweetener." (*Id*. at ¶ 33.) Plaintiff claims he "would not have purchased the Product, or would not have paid as much as he did, had he known that the Product contained only a negligible amount of monk fruit[.]" (*Id*. at ¶ 34.)

**B. <u>Plaintiff's Claims and Proposed Class</u>**

Based on the above allegations, Plaintiff asserts eight claims in his putative class action FAC for: (1) Violation of the CLRA, (2) Violation of the UCL, (3) Violation of the FAL, (4) Breach of Express Warranty, (5) Breach of Implied Warranty, (6) Negligent Misrepresentation, (7) Intentional Misrepresentation/Fraud, and (8) Quasi-Contract/Unjust Enrichment.

Plaintiff asserts these claims in his individual capacity and on behalf of the following class:

> **<u>The California Class</u>**
>
> All California citizens who purchased the Product in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

(*Id*. at ¶ 52.)

Plaintiff seeks damages, equitable relief, and injunctive relief from WNB. (*See id*. at ¶¶ 45-51.)

## III. LEGAL STANDARD

A complaint must be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "[T]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In assessing plausibility on a Rule 12(b)(6) motion, a court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint. *Id.* at 679. But the allegations must consist of more than mere labels, legal conclusions, or "a formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Id.* at 678-79. Dismissal without leave to amend is appropriate where amendment would be futile. *See Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1298 (9th Cir. 1998).

## IV. LEGAL ARGUMENT

### A. Plaintiff's Claims Under the CLRA, UCL, and FAL Must be Dismissed

#### 1. Plaintiff Fails to Plausibly Allege the Product Label is False, Misleading, or Deceptive Under the Reasonable Consumer Standard

Plaintiff fails to plausibly allege that WNB engaged in conduct likely to deceive reasonable consumers because presence is not the same as predominance, the ingredient's panel dispels any alleged confusion or deception, and reasonable consumers who purchase a 1:1 sugar substitute are concerned if the product tastes, bakes, and mixes like sugar, not the amount of a specific ingredient in the product.

Claims under CLRA, FAL, and UCL are governed by the reasonable consumer test, under which a plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The reasonable consumer standard requires more than a mere possibility that some

consumers may be misled by the defendant's act or practice; rather, it 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Whether a representation is "likely to deceive" requires a court to determine "that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003). "[C]ourts may conclude that a business practice is not likely to deceive a reasonable consumer as a matter of law." *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F.Supp.3d 1158, 1167 (S.D. Cal. 2019).

In general, a plaintiff's "selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA, FAL, or UCL claim." *Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012); *see also Argueta v. Henkel Corp.*, 793 F. Supp. 3d 1192, 1198 (C.D. Cal. 2024) ("[A] plaintiff's own 'unreasonable assumptions about a product's label or desire to take the label out of 'its proper context' will not suffice.") (quoting *Becerra v. Dr. Pepper/Seven Up., Inc.*, 945 F.3d 1225, 1229-30 (9th Cir. 2019)). Rather, courts look to the "promotion as a whole" to determine if a product's advertising is deceptive. *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995).

*a. Reasonable Consumers Understand That an Ingredient's Presence is Not the Same as Predominance*

Reasonable consumers understand that an ingredient's presence does not automatically equal predominance in a product. Thus, Plaintiff's allegations that the Product is misleading because it contains more erythritol than monk fruit are implausible and carry no weight. (FAC at ¶¶ 18-19.)

The Product label accurately lists both monk fruit and erythritol as ingredients. It does not make any affirmative representations about the product ingredient proportions or which ingredient serves as the "primary" sweetener. This is fatal to

Plaintiff's statutory claims. *See Martinez v. Mead Johnson & Co., LLC*, 2022 WL 15053334, at *5 (C.D. Cal. Oct. 22, 2022) ("[Plaintiff] alleges that she reasonably relied on the 'Milk-based' label to expect that milk was the primary ingredient by weight in the [defendant's] products . . . [Plaintiff] otherwise alleges no factual support for why a reasonable consumer would narrowly interpret a ***something***-based label to mean that ***that something*** must contribute the most to the product's weight, relative to any other ingredient") (emphasis in original); *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) ("The labeling statement does not claim a specific *amount* of vegetables in the product, but rather speaks to their presence in the product, which is not misleading."). The Product label indicates it is a "Monk Fruit Organic Sweetener." (FAC at ¶ 14.) Nowhere does the label imply the Product is entirely or predominantly made of monk fruit. *See Daniels v. Eagle Fam. Foods Grp., LLC*, 797 F. Supp. 3d 1154, 1166 (E.D. Cal. 2025) (finding label on hamburger helper product which stated it was "Made with Real Cheese" was not deceptive because the product did in fact contain cheese even though it was "only a small part").

Plaintiff's suggestion that the Product actually contains "0.87% monk fruit extract and 99.13% erythritol" does not make the label misleading. (FAC at ¶ 20.) Plaintiff himself admits that "monk fruit extract is 100-250 times sweeter than sugar." (*Id.* at ¶ 21.) In order for the Product to serve as a 1:1 sugar substitute, it follows that there must be a significantly smaller amount of monk fruit extract to make up for its potency. (*See* FAC at ¶¶ 14, 21.) Reasonable consumers would not immediately assume that monk fruit comprises more than half of the volume of the Product by weight, like Plaintiff implies. *See Moore v. Trader Joe's Co*, 4 F.4th 874, 886 (9th Cir. 2021) (holding that reasonable consumers would "necessarily require more information" before they could reasonably conclude that that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar). In fact, the FDA requires that products list ingredients in descending order by weight. *See* 21 C.F.R. § 101.4(a)(1).

Organic erythritol is clearly listed first and organic monk fruit extract is listed second. (FAC at ¶ 14.)

For these reasons, Plaintiff's consumer deception claims based on the amount of monk fruit are implausible as a matter of law. *See Becerra*, 945 F.3d at 1229-30 (9th Cir. 2019) (plaintiff cannot allege "plausible misunderstanding of [a] word" different from "common understanding"); *e.g.*, *Elbaz v. Vitals Int'l Grp.*, 2018 WL 5868739, at *3-4 (C.D. Cal. Apr. 10, 2018) (dismissing UCL, FAL, and CLRA claims for lack of deception where "[a] consumer would have to ignore half of the representation" to adopt plaintiff's proffered interpretation).

*b. The Product Advertising is Not Misleading Because the Back Label Dispels Any Confusion.*

The ingredient panel further defeats any plausible claim of deception. Plaintiff's UCL, FAL, and CLRA claims fail because any alleged ambiguity or confusion arising from "monk fruit sweetener" is dispelled by the Product's ingredient list, which reasonable consumers would read when determining whether to buy a sugar substitute.

Courts routinely find that a plaintiff cannot meet the reasonable consumer standard for deception when the labels, analyzed as a whole, clearly disclose the product's ingredients. For instance, in *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015), the court granted the defendant's motion to dismiss, in part, because "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA." *Id.* at 1035. The plaintiff brought suit against the defendant, alleging the defendants' products had deceptive labeling because the pictures on the front of the products conveyed that the pictured ingredients were the primary or most prominent components of the product. *Id.* at 1034. The court found the plaintiff's claim failed because "a reasonable consumer would simply not view pictures on the packaging of

a puree pouch or box of fruit bars and assume that the size of the items pictured directly correlated with their predominance in the blend." *Id.* at 1035.

Like in *Workman*, "[e]very reasonable shopper knows that the devil is in the details" and Plaintiff, if concerned with what was exactly in the Product, would simply turn the Product around to read that there are two ingredients in the Product —monk fruit and erythritol—dispelling any confusion concerning the other labels. Plaintiff cannot maintain that the Product is false or misleading because "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Id.* (quoting *Williams*, 552 F.3d at 939).

"If an ambiguity on the front packaging of a given product matters to a consumer . . . and the back packaging resolves that ambiguity, the consumer cannot claim to have been misled." *Daniels*, at 797 F. Supp. 3d at 1163. If Plaintiff, as he alleges, believed the Product's label implied that monk fruit was the sole or predominant ingredient by weight, Plaintiff could have read the ingredient's panel, which discloses that there is monk fruit extract and erythritol, and that there is more erythritol than monk fruit. *See* 21 C.F.R. § 101.4(a)(1).

Plaintiff's allegations would improperly impose a requirement that manufacturers disclose detailed ingredient information on the front label, where the back label already provides accurate and complete product information.[1] There is nothing unlawful about truthful labeling that, when read as a whole, clearly disclose what ingredients are contained in the Product.

///

///

///

[1] Plaintiff references competitors of WNB that add "with erythritol" as proof, albeit wrongly, that the Product is unlawful. (FAC at ¶ 28.) However, a competitor's choice to include additional information does not render the Product's labels deceptive, misleading, or unlawful. Indeed, how competitors label their products has no bearing on if the Product's labels are deceptive to a reasonable consumer.

*c. No Reasonable Consumer Expects a Sugar Substitute Will Taste 100-250 Times Sweeter than Sugar.*

A reasonable consumer purchasing a product expressly marketed as a "sugar substitute" understands the fundamental purpose of the Product: to replace sugar in everyday use. The defining feature of the Product is functional equivalence—the Product is used proportionally to sugar in a 1:1 ratio. (FAC at ¶ 21.) By their nature, sugar substitutes are formulated to mimic sugar's taste, texture, usability. Plaintiff's suggestion that the Product is misleadingly advertised is contradictory. Plaintiff acknowledges that the Product is a 1:1 sugar substitute and that monk fruit is 100-250 times sweeter than sugar. (FAC at ¶ 21.) If the Product contained primarily monk fruit by weight, it would cease to function as a sugar substitute. Drinks and foods using the Product to replace sugar in the recipes would be overwhelmingly sweet and consumers would not be able to use the Product as intended—as a 1:1 sugar substitute.

*Puri v. Costco Wholesale Corp.* is illustrative of this point. In that case, the plaintiff brought claims under the UCL, FAL, and CLRA alleging that a Chocolate Almond Dipped Vanilla Ice Cream Bars packaging was misleading because the plaintiff expected the product's chocolate coating to be made predominantly from cacao beans, rather than vegetable oils. 2021 WL 6000078, at *1-2 (N.D. Cal. Dec. 20, 2021). The court granted the defendant's motion to dismiss, reasoning the plaintiff's complaint did not present facts to support the plaintiff's fundamental theory that to qualify as chocolate, a food must be predominantly made from ingredients derived from cacao beans. *Id.* at *6. The court concluded that a reasonable consumer would know that chocolate must be mixed with fat or oil to create a solidified shell around an ice cream bar. *Id.* at *7.

Here too, Plaintiff's expectation that a monk fruit sweetener designed to serve as a 1:1 sugar substitute would contain more than 50% monk fruit by weight is unreasonable. To properly replace sugar in a 1:1 ratio, there must be a significantly

smaller amount of monk fruit due to its potency. (FAC at ¶ 21.) No reasonable consumer interested in purchasing a sugar substitute expects it to taste 100-250 times sweeter than sugar. And no reasonable consumer interested in purchasing the Product expects that monk fruit is the primary or predominant ingredient by weight. Plaintiff's theory of deception based on these allegations is untenable.

Plaintiff fails to adequately plead that a reasonable consumer would be deceived and misled by the Product's labeling. Thus, Plaintiff's UCL, FAL, and CLRA claims must be dismissed as a matter of law.

### B. Plaintiff Fails to State a Claim for Breach of Express Warranty and Breach of Implied warranty

Plaintiff's claims for breach of express warranty and breach of implied warranty fail because Product accurately discloses the ingredients and does not affirmatively state that monk fruit is the predominant sweetener.

To prevail on a breach of express warranty claim, a plaintiff must prove that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013); *see also Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th. Cir. 1997) ("To prevail on a theory of breach of express warranty, [plaintiff] must prove that [defendant] made affirmations of fact or promises that became part of the basis of the bargain."). This requires "a specific and unequivocal written statement." *Id.* at 1181. "A plaintiff who claims a breach of the implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'" *Viggiano*, 944 F. Supp. 2d at 896.

Plaintiff's breach of express warranty claim fails because "the representations do not amount to an unequivocal statement or promise to the consumer" that the literal amount of the monk fruit in the Product would be a certain percentage. Further,

any "affirmations" from the Product labels do not constitute breaches of a warranty because the representations on the labels are true. The labels simply describe the Product as a monk fruit sweetener. The back of the Product accurately lists the ingredients. Such truthful descriptions cannot be express or implied breaches of warranty because there is no falsity contained in the labels. *See Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 905 (N.D. Cal. 2021) (rejecting breach of express warranty claim with respect to Vitamin C gummies where the representations on the product label with respect to dosages were true).

When a plaintiff's express and implied warranty claims are predicated on the same alleged "affirmation of fact or promise," the implied warranty claim "rises and falls" with the express warranty claim. *See id.* Because Plaintiff's express warranty claim fails, so does his implied warranty claim.

Plaintiff's implied warranty claim fails for the additional reason that there is no privity between Plaintiff and WNB. Plaintiff alleges that he "purchased the Product at a Walmart retail store in Los Angeles County in or around 2025[.]" (FAC at ¶ 32.) Under California law, a plaintiff must plead and prove that he directly purchased the product at issue from the defendant, thus creating a contractual relationship between the parties. *McGarity v. Sun-Maid Growers of California*, 801 F. Supp. 3d 1120, 1131 (S.D. Cal. 2025) ("An end consumer who buys from a retailer is not in privity with a manufacturer.") While an exception to the privity rule exists with respect to certain foodstuffs, this exception "only applies only to claims for breach of the implied warranty of fitness for human consumption," which Plaintiff does not allege here. *See generally Collyer v. Catalina Snacks Inc.*, 712 F. Supp. 3d 1276, 1288 (N.D. Cal. 2024). Since Plaintiff lacks privity with WNB, he cannot state an implied warranty claim and this claim must also be dismissed with prejudice.

### C. **<u>Plaintiff Fails to State a Claim for Negligent Misrepresentation and Intentional Misrepresentation</u>**

To state a claim for intentional misrepresentation under California law,

Plaintiff must establish: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (Cal. 2004). Negligent misrepresentation differs in that it "does not require scienter or intent to defraud." *See Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173-74 (Cal. 2003) (quotation omitted). Common law fraud claims differ from consumer protection statutes in that "a common law fraud deception must be actually false." *In re Actimmune Mktg. Litig.*, WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)).

**1. Plaintiff Does Not Allege an Actionable Misrepresentation**

Plaintiff's negligent misrepresentation and intentional misrepresentation claims fail because there is no misrepresentation on the Product's labels. Plaintiff contends that WNB misrepresented material facts, such as the product being "primarily sweetened" with erythritol. (FAC at ¶¶ 119, 127.) But these allegations are conclusory and demonstrably false. As outlined above, monk fruit extract is the primary sweetener. The label on the Product is true. Thus, there is no "misrepresentation" upon which Plaintiff may base his misrepresentation claims and the Product "labels do not contain a false affirmation of fact necessary to state a claim under intentional or negligent misrepresentation." *Tarvin v. Olly Pub. Benefit Corp.*, 756 F. Supp. 3d 797, 808 (C.D. Cal. 2024).

**2. Plaintiff Fails to Plausibly Allege Scienter**

Plaintiff fails to plausibly allege that WNB had the requisite scienter for his intentional misrepresentation/fraud claim. Plaintiff has only alleged scienter in a conclusory manner by alleging that WNB "intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Product" and that WNB made these representations "with the intent to induce Plaintiff and Class Members to purchase the product[.]" (FAC at ¶¶ 127, 129.) These

conclusory allegations of scienter are insufficient without supporting facts that allow the Court to draw the reasonable inference that WNB knew its labeling was misleading. *See Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (finding plaintiff had "not alleged specific facts that allow the court to draw the reasonable inference that [the defendant] knew it was issuing misleading advertisements at the time [the plaintiff] purchased his laptop.") (cleaned up and citations omitted); *Graham v. Andros Foods USA, Inc.*, 2025 WL 3190647, at *11 (C.D. Cal. Aug. 12, 2025) (dismissing claims under the UCL, FAL, CLRA, negligent misrepresentation, and intentional misrepresentation when the plaintiff failed to provide facts to plausibly support allegations of scienter).

### D. <u>Plaintiff Fails to State a Claim for Quasi-Contract/Unjust Enrichment</u>

Plaintiff's claim for quasi-contract and unjust enrichment also fails. As a preliminary matter, California law does not recognize an independent cause of action for unjust enrichment. *See In re Apple & AT&T Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011). Furthermore, a plaintiff cannot assert an unjust enrichment claim that is merely duplicative of statutory or tort claims for deceptive advertising. *See id.* Finally, a plaintiff cannot invoke state law to assert an unjust enrichment claim while simultaneously alleging the existence of an express warranty. *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1159 (S.D. Cal. 2021) ("the Court finds that Plaintiffs cannot bring a California quasi-contract claim while bringing an express warranty claim"). In this case, Plaintiff asserts unjust enrichment as an independent cause of action and the factual bases underlying this claim are duplicative of his other statutory and tort claims for deceptive advertising. Since California law does not recognize an independent cause of action for unjust enrichment and Plaintiff has also asserted a claim for breach of express warranty, the Court should dismiss Plaintiff's unjust enrichment claim without leave to amend.

### E. <u>Plaintiff Lacks Standing to Seek Injunctive Relief</u>

Plaintiff lacks standing to seek injunctive relief in connection with his claims. (FAC at ¶ 48.) "To have standing to obtain injunctive relief, a plaintiff must allege that a 'real or immediate threat' exists that he will be wronged again." *Rahman v. Mott's LLP*, 2014 WL 325241, *10 (N.D. Cal. Jan. 29, 2014). "The alleged threat cannot be 'conjectural' or 'hypothetical.'" *Id.* ("[T]o establish standing, plaintiff must allege that he intends to purchase the products at issue in the future.").

Here, Plaintiff fails to allege that he intends to purchase the Product in the future. In fact, Plaintiff states he "will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the Product again although he would like to." (FAC at ¶ 41.) Because Plaintiff lacks standing to seek injunctive relief on behalf of himself, he also lacks standing to seek injunctive relief on behalf of the general public.

## V. <u>CONCLUSION</u>

For the foregoing reasons, WNB's Motion should be granted and Plaintiff's claims should be dismissed without leave to amend.

Dated: March 26, 2026

SNELL & WILMER L.L.P.

By: */s/ Daniel S. Wittenberg*
Daniel S. Wittenberg
Andrew S. Green

Attorneys for Defendant
WISDOM NATURAL BRANDS

**Certificate of Compliance**

The undersigned, counsel of record for Defendant, certifies that this brief contains 4349 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 26, 2026

/s/ *Daniel S. Wittenberg*
Daniel S. Wittenberg

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2026, a true and correct copy of the foregoing **DEFENDANT WISDOM NATURAL BRANDS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** was filed electronically with the Clerk of the above-captioned Court utilizing the Court's CM/ECF system, resulting in an automatic transmission of a Notice of Electronic Filing to all counsel of record in the above-referenced proceeding.

*/s/ Rachael Sandoval*______
SNELL & WILMER L.L.P.